JANVIER, Judge.
The defendant corporation is engaged in the jewelry business in New Orleans. As a part of its operation it buys old gold from persons who have jewelry containing gold which they decide to discard.
The plaintiff was the owner of a gold ring in which was mounted a green stone. This entire controversy hinges on a determination of the question of whether this stone was a very valuable emerald or was only a piece of ground glass colored and shaped to imitate an emerald and worth only a dollar or two at most.
In effect plaintiff alleges that she sold the gold of which the ring was made, and that defendant was to remove from it and return to her the stone, which was a genuine emerald worth $3600.00, and that she has been unable to obtain the said gem after repeated demands. She prayed for judgment for $3600.00.
Defendant admits the purchase of the gold, but denies that the “stone” which was set in the ring was a genuine emerald, and, maintained that it was in fact merely a comparatively worthless imitation valued at from seventy-five cents to Two Dollars.
In the District Court the Judge stated that, since he believed that the stone which was in the ring was worth not more than $2.00 and since even that stone was not returned to plaintiff, he would render judgment in her favor for $2.00. However, obviously through clerical error the judgment which was rendered and signed was in favor of defendant for $2.00, “plus all costs.” It is conceded that this was the result of a clerical error, and we feel certain that what the District Judge intended was to render judgment in favor of plaintiff for $2.00, but to require her to pay costs. We say this because in his statement from the bench after the testimony had been taken the Judge said: “I’m going to render judgment for $2.00 in favor of plaintiff and plaintiff to pay costs.” As a matter of fact, the judgment reads as follows : “It is ordered, adjudged and decreed that there be judgment herein in favor of defendant, Pailet and Penedo, Inc., and against the plaintiff, Mrs. Lillian Barry, widow of Walter Walker, in the full sum *134 of Two and no/100 Dollars ($2.00), plus all costs herein.”
Plaintiff has appealed, contending that the amount of the judgment should be $3600.00 as prayed for. Defendant has neither appealed nor answered the appeal of plaintiff.
During July, 1956, plaintiff, having heard of defendant corporation and noticing its advertisement for the purchase by it of old gold, decided to dispose of two articles containing gold and called at defendant’s place of business. She exhibited these two articles to Mr. David Pailet, the President. One of them was the ring referred to. Mr. Pailet offered her $16.00 for the two articles which she agreed to accept. Plaintiff says that Mr. Pailet told her that whenever there was involved the removal of a valuable gem, it was the invariable custom to have this removal done most carefully so that the gem might not be damaged and that, therefore, he told her that she could return at a later date for the stone which would be removed. She says that she was given a tab from a customer’s claim check envelope, and on this tab were written the words “stone” and “We owe you $16.00.” This tab was produced in evidence and the words, “we owe you $16.00” were stricken out by a line run through them in ink or in pencil. Plaintiff claims that this was done at that time and that she was given the claim check to indicate that there was a stone which belonged to her which she would obtain later.
She says that, when she returned later, she was told that the stone could not be found, but that an additional search would be made for it, and that she returned many times, but that the emerald could never be found.
Defendant denied that the ring, which was bought for the gold which was in it, was set with a valuable emerald and contended that it was the invariable custom, where old gold was purchased and there were valuable gems involved, to immediately remove them and to return them to the owner, and that, while Mr. Pailet has no recollection of this particular transaction, he is certain that no mention was made of a valuable emerald, and that if the stone which was in the ring was in fact a real emerald, he would have followed the usual custom and would have removed it and returned it to plaintiff at once.
There is no doubt that there was a stone of some kind involved and that it was not returned to the plaintiff. Nor is there any doubt that Mr. Pailet who received the ring was an expert in determining whether any particular stone was real or was merely an imitation. He was what is known as a jewelologist, and we feel certain that whether or not he was told that the ring was set with a valuable emerald, he would have noticed it if it was such a gem. And we feel that if he accepted from plaintiff such a ring, he would have noticed this and would have been most careful to see that it was either returned to’ plaintiff at that time or was meticulously retained so that it might be returned later.
We pass on to the question of whether there is sufficient proof to justify a conclusion that the stone in question was a genuine emerald.
Counsel for plaintiff recognize the fact that there is no positive proof as to the genuineness of the stone nor as to its value, but they point out much circumstantial evidence and argue that this is sufficiently persuasive to justify a judgment for plaintiff for the amount of the real value of the stone, and, in their brief, they cite several cases which warrant their statement that “in civil matters as distinguished from criminal matters there is no requirement that circumstantial evidence must exclude every other hypothesis, but the rule prevails that proof is only required to a legal certainty and by a preponderance of the evidence in order to establish the claim.”
One of the very strange circumstances to which they point is the fact that, at the time plaintiff sold the ring to the defendant corporation, she was given a claim check *135 which shows that she was entitled to a stone and that this stone, whatever it may have been, was never returned to her.
As already stated, there is no doubt that there was a stone of some kind and defendant’s contention is that it was obviously of no value, but that since plaintiff wanted it, she was given the claim check so that she could claim it later.
The father of plaintiff, who died many years ago and had all of his life been employed by jewelers in this City, all of whom were recognized as outstanding leaders in the jewelry business, had, during his lifetime, sold innumerable items of jewelry containing valuable gems, and it is contended that he must have known the difference between an imitation emerald and a real gem. However, it is shown that he was not a jewelologist and that he was not employed in that capacity by the large jewelry firms for which he had worked, though there is testimony by his son to the effect that his father had, on numerous occasions, been employed to value gems.
It is shown that, during a great part of the life of plaintiff’s father, he was the owner of a stick pin and that he always referred to the stone which was in that pin as a valuable emerald. It is also shown that when plaintiff became engaged to the man to whom she married, her father, owner of the stick pin, said that he would like to give it to her for presentation to her intended husband as a valuable memento and that he had had the emerald removed from the stick pin and reset in the ring with which we are now concerned. Plaintiff says that she gave this ring to her husband and that it contained the same stone which had formerly been in her father’s stick pin. This took place apparently during the year 1946, which was the year in which plaintiff was married.
That testimony is really the only evidence in the record as to the fact that that particular gem was a genuine emerald and it is obvious that that testimony is only hearsay and is based on statements made to plaintiff and to her brother, who also testified and who said that the father al--ways referred to the stone as a valuable emerald.
As proof of the value of such a gem as plaintiff claims was in the ring she produced Mr. Milton Adler, a recognized jewelry expert. In Mr. Adler’s establishment she selected one from a collection of emeralds which he produced, which she said resembled the lost stone in color, and there was produced to Mr. Adler the original stick pin from which the lost stone had been removed. Mr. Adler stated that if an emerald of the quality described and of the size which would fit in the pin could be found, it would be worth $3750.00. On’ another occasion plaintiff’s brother also called on Mr.' Adler and was shown the same tray of emeralds which plaintiff saw and he, without any knowledge of the emerald which plaintiff had pointed out, picked out the identical emerald. These facts are pointed to as evidencing the value of the stone which was in the ring and it is argued that plaintiff’s claim check indicated that a valuable stone was retained when the sale of old gold was consummated.
There is considerable dispute as to whether the claim check was given to plaintiff when she made the original sale, or whether it was given to her later when she returned and said then for the first time that there had been a stone in the ring, and it is contended by the defendant that it was on this later occasion that she was given the claim check merely to entitle her to such stone as had been in the ring, which was an imitation and which would be replaced at the cost of from seventy-five cents to Two Dollars.
Under all the circumstances we feel that there are too many links in the chain of circumstances and too many weak links in this chain to justify the conclusion that the stone, which plaintiff’s father had *136 owned many years before and had passed through such transformations and possessions, was the identical stone which plaintiff’s father had owned, and there is also the possibility that plaintiff’s father himself might have all of his life been in error in believing that the original stone was a genuine emerald. The evidence leaves no doubt at all that only a real expert may tell the difference between a genuine emerald and a skillfully made imitation.
We reach the conclusion that the District Judge was not in error in concluding that the stone which was referred to in the claim check was not shown to have been a genuine emerald.
The record shows that defendant offered to replace the stone with another imitation and that plaintiff refused to receive this. If the stone in question was merely an imitation, that is all that plaintiff would have been entitled to, and therefore since defendant obtained and was willing to return a similar stone, the judgment should have been one of complete dismissal. However, counsel for defendant in their brief make the following statement: “It is respectfully submitted that the $2.00 awarded intended to be in favor of plaintiff-appellant is in error in as much as a glass stone was always available to her. However, this matter is too insignificant to occupy the attention of the Court. Therefore, it is submitted that the judgment of the lower court be affirmed in all respects.”
Under all the circumstances we think it proper to correct the judgment and to make it read in favor of plaintiff in the full sum of $2.00, together with all costs which are to be paid by defendant.
It is therefore ordered, adjudged and decreed that there be judgment in favor of plaintiff, Mrs. Lillian Barry, widow of Walter Walker, and against defendant, Pailet and Penedo, Inc., in the full sum of $2.00, with legal interest from judicial demand, and all costs.
Amended and affirmed.